# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **CANAL INDEMNITY COMPANY,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **vs.** ) <br> ) <br> **FRANKIE CARBIN, d/b/a Carbin** ) <br> **Construction, *et al.*,** ) <br> ) <br> **Defendants.** ) | Civil Action Number <br> **5:16-cv-00630-AKK** |

## MEMORANDUM OPINION

Canal Indemnity Company filed this action against Frankie Carbin, doing business as Carbin Construction ("Carbin"), Sherry L. Ford, and Aaron Jerome Ford, asking the court for a judgment declaring that it has no duty to defend Carbin in the underlying lawsuit styled *Frank Carbin Construction, Inc. v. Aaron Jerome Ford and Sherry L. Ford, et al.*, case number 47-CV-2014-901887.00, pending in the Circuit Court of Madison County, Alabama. *See* doc. 1. The court has for consideration Canal's motion for summary judgment, doc. 25, which is fully briefed, docs. 25; 28; 29, and is due to be granted.

### I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the

entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Id.* at 323. The burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 244 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual dispute will be resolved in the non-moving party's favor when sufficient competent evidence supports that party's version of the disputed facts. B*ut see Pace v. Capobianco*, 238 F.3d 1275, 1276–78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and

unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. FACTUAL BACKGROUND

Carbin filed the underlying lawsuit against the Fords, asserting "a mechanic[']s and materialman's lien and seeking sums allegedly due for work performed under a construction contract." Doc. 25 at 2. Relevant here, the Fords filed counterclaims against Frank Carbin Construction, Inc. and third-party claims against Frank Carbin, individually, based on their allegations that, "over a year past the deadline to complete construction, [Carbin] . . . refused to perform any other work on the residence until [it] was paid an additional $11,771.43" and "walked off the job" after receiving "96.6 percent of the money owed under the contract although only approximately 88 percent of the construction work had been completed." *See* doc. 1-2 at 3. Carbin has submitted this counterclaim to Canal, and Canal has filed this action seeking a declaration that it has no obligation to defend Carbin.

# III. ANALYSIS

Canal insured Carbin under a policy that provides, in pertinent part,

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . . .

Doc. 1-4 at 11. The policy defines "bodily injury" and "property damage" as events caused by an "occurrence," *see id.* at 11, which the policy, in turn, defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," doc. 1-5 at 12 (emphasis added). As its primary argument in support of its contention that it has no duty to defend Carbin, Canal asserts that the injuries the Fords allege in the underlying lawsuit do not constitute "bodily injury" or "property damage" caused by an "accident." Doc. 25 at 8.

The policy does not define "accident." However, the Alabama Supreme Court has described an accident, in the insurance context, as "an unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated." *Hartford Casualty Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005) (internal quotation marks omitted). *See also Liberty Mut. Ins. Co. v. Wheelwright Trucking Co.*, 851 So. 2d 466, 480 (Ala. 2002) (defining "accident" as "an unexpected happening

4

rather than one occurring through intentional design or an event which takes place without one's foresight or expectation or design"). To get around this definition, Carbin contends, first, that its actions "were not done with expectation or intent of injury." Doc. 28 at 10. According to Carbin, it "did not intend or expect the fixed price of the contract to be changed," "the Fords made oral modifications to the allowances, choosing expensive upgrades in excess of the allowances," and "the Fords' allegation that Carbin failed to disclose that he would not finish the project for the fixed price does not constitute an intentional occurrence, because the price change was due to the Fords' actions." *Id.* at 11. These contentions are unavailing, because the construction contract's express provisions regarding changes or upgrades affecting the final price (and timely payment for such modifications) show that, while these events may have been unexpected, they were not unforeseeable. *See, e.g.*, doc. 1-1 at 9 (requiring, prior to the implementation of any requested upgrades, a "written change order, in a form which is acceptable to [Carbin] and which sets forth the changes to be made and the additional consideration to be paid . . . ."); *id.* ("In the event that [Carbin] agrees to such changes and has not received all of the additional consideration to be paid . . ., then the balance of said consideration shall be paid as a part of the final payment . . . .").[1]

---

[1] The court is also not persuaded by Carbin's related argument that it "did not intend or

5

Second, Carbin contends that it "did not make unilateral changes to the specifications" and that the "Fords made verbal modifications to the original contract which included the requests for various upgrades." Doc. 28 at 13–14. Therefore, Carbin asserts that any "changes to the plans" were the Fords's fault, and that Carbin's actions "are correctly characterized as an accident." *Id.* at 13–14. Even if it is true that the Fords made or caused the changes, verbal modifications or requests for upgrades are, by their nature, intentional conduct. Therefore, this contention is also unavailing.

Third, Carbin contends that its actions were unintentional and therefore an accident. Another judge of this court has rejected a similar contention by a builder, noting that "[the builder] mean[s] to argue that [it] did not *unjustifiably* abandon the site. [It] certainly left the site before finishing the home, apparently because of monetary disputes with the [buyer]." *Emplrs. Mut. Cas. Co. v. Smith Constr. & Dev., L.L.C.*, 949 F. Supp. 2d 1159, 1172–73 (N.D. Ala. 2013) (emphasis in original). The court held that, regardless of whose "fault" it was, the builder's

---

expect to be delayed in completing the Fords' home by the deadline contemplated in the contract" due to the Fords's "fail[ure] to pay Carbin as work was completed" and Carbin's consequent inability "to continue work on the home due to lack of funds," doc. 1-1 at 12. As explained *supra*, even if Carbin "expected" the Fords to timely pay for the upgrades, their alleged failure to do so cannot reasonably be described as unforeseeable in light of the construction contract. *See id.* at 11–12 ("The Completion Date may be extended by Contractor for such additional time as Contractor shall determine to be reasonably necessary . . . to complete the construction of the Dwelling as the result of any delays in the progress of the construction of the Dwelling . . . due to changes in the Plans and Specifications . . . .").

6

abandonment of the project was still an intentional act. *See id.* Similarly here, Carbin's abandonment of the project was an intentional act.

As its second argument in support of its motion, Canal contends that the Fords's allegations do not support the negligence and wantonness claims (which do not require "intent" as an element), and, "[w]here facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action." Doc. 25 at 10 (citing *Hartford Casualty Ins. Co.*, 928 So. 2d at 1012). Carbin disagrees, and contends, based on the underlying complaint, in which the Fords base these claims, in part, on "extensive damage to their residence," *see* doc. 1-2 at 5, 8, and the purported "failure to construct the home by the plans and specifications could surely have been done negligently," doc. 28 at 24, that the Fords's "accusation that Carbin negligently constructed the home is enough to state a negligence claim . . . ." and to qualify as an accident under the policy, *id.* However, Carbin cites no case to support this contention. *See id.* at 23–24. In fact, to the extent the terms "negligence" or "wantonness" might suggest non-intentional conduct, the Alabama Supreme Court has not described conduct similar to Carbin's alleged conduct as "accidental" for purposes of insurance coverage, and has not extended its definition of "accident" in a manner that supports Carbin. *See, e.g.*, *Hartford Casualty Ins. Co.*, 928 So. 2d at 1013 (negligence claim did not qualify as an

"accident" because, although the insured "may have made a mistake of fact or an error in judgment," it "at all times acted in a deliberate and purposeful manner") (internal quotation marks omitted); *U.S. Fid. & Guar. Co. v. Warwick Dev. Co., Inc.*, 446 So. 2d 1021, 1023 (Ala. 1984) (faulty workmanship claim did not constitute an "occurrence," which policy defined as "an accident, including . . . bodily injury or property damage neither expected nor intended from the standpoint of the insured").

## IV. CONCLUSION

In short, based on the allegations in the underlying complaint, the court concludes that the Fords's alleged injuries did not arise out of bodily injury or property damage caused by an "accident." Accordingly, Canal's motion for summary judgment, doc. 25, is due to be granted. The court will enter a separate order contemporaneously herewith.

**DONE** the 10th day of August, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE